All right, is it SIPAL or CIPAL? SIPAL. SIPAL. Make it clear to the court. My name is Colin SIPAL and I represent Sea-Land Services, the petitioner in this case. Today I'm going to talk about two reasons why the Benefit Review Board was wrong in deciding to affirm the claimant's 2011 injury with the second employer, Universal Maritime Services, UMS. First, the ALJ erred in holding that the opinions of Drs. Brown, Kagan, and Vanderweide constituted substantial evidence but an aggravation injury. Second, the ALJ improperly disregarded key medical evidence and the opinions of Dr. Eidman, the treating physician, for more than 30 years. The ALJ initially found that the claimant carried his prima facie case for a second injury in 2011 with UMS. After the claimant meets his prima facie case, the burden shifts to the employer to provide substantial evidence rebutting an aggravation injury. In a two-injury, multiple-employer, last maritime employer scenario, the question hinges on can the second employer show that the second injury did not aggravate, accelerate, or combine with the prior injury to result in disability? And I'm citing the Strong Shipping Company v. Nash decision, a Fifth Circuit decision at 782 Federal 2D 513. The Benefit Review Board correctly cited the standard for an aggravation rule in their decision on page four. It cited the Marine Corp. v. Director at 431 F3D 1032, and then Marine at the Seventh Circuit. The aggravation rule does not require that the later injury fundamentally alter a prior condition. It is enough that the second injury produces or contributes to worsening symptoms. In this case, the ALJ first erred in finding that the opinions of Dr. Brown constituted substantial evidence to rebut an aggravation injury. Dr. Brown examined the claimant only once after the 2011 injury, on November 7, 2013. In his report, which is marked as UMS Exhibit No. 7, starting at page 7, he did not testify. He only submitted a report, so he didn't testify at trial or by deposition. But on page 11 of UMS Exhibit No. 7, Dr. Brown acknowledged that he only reviewed medical records through September 15, 2011. That's less than two months after the 2011 injury on July 27, 2011. And it excludes more than five years of treatment that the claimant received for his back and neck between September of 2011 and the date the treating doctor testified on October 2016. Because he didn't review any records after September of 2011, we know he did not review the MRI imaging of the lumbar or cervical spine after 2011. Dr. Brown's report also does not suggest that he reviewed any of the x-ray films after the 2011 injury. Dr. Brown's opinions are unreliable because he lacked the key medical evidence necessary to provide the foundation for an opinion on causation, but also because his opinions are inconsistent on the aggravation injury and the cause. Dr. Brown opined on page 15 of UMS Exhibit No. 7 that the claimant's pre-existing back condition predisposed him to an injury of the lumbar spine in the future. He then explained on page 18 of Exhibit No. 7 of UMS that the 2011 injury may have caused a temporary exacerbation of the claimant's pain in the back, where the claimant had a lumbar strain from trying to jerk away while his hands were crushed under a heavy container. Dr. Brown's opinions can't be considered substantial evidence rebutting an aggravation injury because they actually support a temporary exacerbation or flare-up of pain through this lumbar strain. Under the Marinette decision, correctly cited by the board on page 4, but incorrectly applied, a temporary exacerbation of symptoms through a lumbar strain would be enough under the aggravation rule. Turning to the next doctor, Dr. Kagan, the AOJ should not have relied on Dr. Kagan's opinions. Dr. Kagan's credentials are absent from the record. You can decipher through the letterhead at the top of his report on UMS Exhibit 15, page 1, that he specializes in interpreting MRI film and imaging. There is no information on his qualifications that would render him qualified to apply on orthopedic injuries and causation other than to read and interpret MRI film. Dr. Kagan did not physically examine the claimant. He practices in Fort Lauderdale, Florida. The claimant lives in Houston, Texas. He apparently reviewed some of the claimant's medical records and imaging, including an MRI scan of the left shoulder. The left shoulder is not the injury in question today. It's the lumbar spine and the cervical spine. His report only reflects that Dr. Kagan reviewed one x-ray report that was on June 24, 2011. That's again before the injury in question in 2011 with UMS. And there's no evidence he reviewed any film or even any report from an MRI or x-ray taken after 2011 or after July 27, 2011. The record doesn't support that Dr. Kagan's qualified to opine on causation. And to his credit, he doesn't give a definitive opinion on causation. He does provide notes and comments that the administrative law judges uses to provide support for substantial evidence to rebut causation. He cites Dr. Kagan's notes on page 32 and 33 of his decision in order to help find that UMS presented substantial evidence to rebut an aggravation injury. Assuming, though, that Dr. Kagan is qualified to compare MRI imaging and x-ray imaging, he didn't have any x-rays or MRI after the July 27, 2011 injury to compare. Dr. Kagan noted that he did not see any initial complaints after the July 27, 2011 injury where the claimant complained of an exacerbation of his pain symptoms. And Judge Rosenauer, the administrative law judge, latched onto that. However, Dr. Kagan's report does not reflect that he reviewed the treating doctor, Dr. Eidman's, August 19, 2011 report in which the claimant did just that. He complained of an exacerbation of his neck and lumbar and low back pain. The Dr. Eidman's August 19, 2011 report, which is at Sealand Exhibit 12, page 58, that reflected the increased pain symptoms shortly after the July 2011 event is critical in this case and it's something that Dr. Kagan did not address and maybe didn't even review. With respect to Dr. Vandewey, the third doctor, he also failed to reconcile this August 19, 2011 report from Dr. Eidman that shows the increased pain and including a clinical exam where he noted increased symptoms. As noted on page 32 of the ALJ's decision and order, all doctors agreed temporary aggravation was possible from the 2011 injury. Dr. Vandewey specifically opined on page 10 of his report there was a possibility of an exacerbation or flare-up of claimant's symptoms that may have occurred after the 2011 injury event and that's at UMS Exhibit 14, page 10. Dr. Vandewey fails to address though in his assessment on page 10, he does not address Dr. Eidman's August 19, 2011 report with the claimant did just that, reporting an exacerbation of his symptoms after the 2011 injury. Instead, Dr. Vandewey concluded that there was not a and that there was insufficient evidence to suggest that the underlying pre-existing musculoskeletal condition was advanced in severity and that's at UMS Exhibit page 10. And that's where Dr. Vandewey, the other evaluating doctors and the ALJ get it wrong in this case. They evaluated to see was there a significant change in the underlying condition at the time of formal hearing, which is five years later, as opposed to looking at the time of Dr. Eidman's August 19, 2011 report where there was evidence of an exacerbation of the claimant's symptoms. And under the aggravation rule, as explained by the Seventh Circuit in the Marinette decision, a temporary exacerbation of pain or flare-up of pain caused by a second injury would be enough. And the lumbar strain that all the consensus of medical opinions in this case support was possible would support an aggravation injury. By focusing on the wrong question, the ALJ on page 33 of his decision in order, he poses the question of whether it was more likely than not that claimant's current back and neck problems are a result of the 2011 injury. Again, he's focusing on the present condition at the time of the formal hearing in 2016 disregarding that important record from August 19, 2011. Turning to the second issue, it said the ALJ disregarded key evidence, including Dr. Eidman's opinion. He also disregarded but first commented on the fact that claimant's return to work before the July 2011 injury substantiated his neck and back symptoms improved to some degree. The claimant actually returned to work in May of 2011 for UMS. He worked in June and July at full duty without any problems with his work. The ALJ was correct that that full duty return to work does support the fact that his neck and back symptoms improved to some degree. However, whenever he made his decision, he simply failed to account that his condition had improved prior to the August 19, 2011 report where Dr. Eidman noted that there was an exacerbation of symptoms. The ALJ disregarded Dr. Eidman's opinions, the treating doctor of more than 30 years, and it's certainly within his right to weigh the credibility of the evidence and the witnesses. And there is no requirement that he provide special treatment to a treating doctor. However, there are good reasons to do so in this case. He was the treating doctor for close to 30 years. The claimant had seen him for approximately 50 visits, and Dr. Eidman had performed multiple surgeries on claimant's back and neck. And Dr. Eidman's medical file was the medical, was the complete medical source for all the doctor's opinions to formulate their opinions in this case when it comes to causation. Your arguments would carry more weight without the substantial evidence rule, but substantial evidence isn't a very high burden for the ALJ to have found. You're right, Your Honor. And there would, we posed it, and I pointed this out on, or this was pointed out in the briefing on page 26 of our brief, that the judge posed the question, the ALJ, an aggravation, or excuse me, substantial evidence, I agree with you, is very light. It's more than scintilla, but he didn't apply the substantial evidence to the correct question. The question is, was there a temporary aggravation? He found substantial evidence that there was not a permanent aggravation, but he should have been looking, and we pointed this out, he raised the question, the ALJ was correct in saying that the aggravation, if there's an aggravation anyway, it would support an aggravation finding against UMS. He knew that an aggravation in any way would have put it on UMS. However, he simply failed to apply it, and ignored the temporary aggravation, or lumbar strain, focusing on whether there was a fundamental change in the spine. And so, I guess our opinion is there wasn't substantial evidence to dispute a temporary aggravation. In fact, all the doctors agreed that a temporary aggravation could happen, or likely to happen. If there's no further questions, I'll . . . You've saved time for rebuttal. Thank you. Hi, pal. Mr. Wheat? May it please the Court? Judge Smith, you hit on the exact problem with this in your question, which is the substantial evidence rule basically makes this an argument for a de novo review by this Court, just like the Sealand asked for a de novo review by the Benefits Review Board. We tried this case, claimant in Sealand did not prove to the ALJ, who's the fact finder in these cases, that claimant suffered an aggravation of his 1997 injury, and the six subsequent surgeries from that injury, and his 2011 injury with my client, UMS. Claimant accepted the ALJ's determination and did not appeal the case. Sealand appealed to the Benefits Review Board, and basically asked the Benefits Review Board for a de novo review of the evidence, as opposed to what Administrative Law Judge Rosenau had found. Sealand was denied that, the Benefits Review Board affirmed. Sealand then filed almost identical brief in this Court, seeking the same de novo review of the evidence that we presented at trial. Both parties at trial presented substantial evidence regarding the aggravation case, and the standard is that the Administrative Law Judge is exclusively entitled to assess both the weight of evidence and credibility of witnesses, including experts, and Judge Rosenau's opinion deals with specificity with regard to the substantial evidence that both sides presented. Both sides, the claimant and UMS, presented evidence to support a finding of either aggravation or no aggravation. The judge weighed that. I'm sorry? If it had come out the other way, you would similarly say substantial evidence would be an uphill sled for you. Frankly, Judge, I've been on the other side of these many times in Administrative Law Judge hearings, and the answer to your question is yes, it's not one to appeal. It's simply a factual determination based on the evidence that the judge reviewed. Both sides tried the case, presented experts. The one thing I'd like to point out with regard to the experts is the Dr. Brown that they referred to was Sealand's doctor. They hired him both before and after the accident to review, to examine and review all of the records that they sent him, and he determined that there was no exacerbation or exaggeration, and that was one of the stronger parts that Judge Rosenau relied on, another being the fact that the claimant proved to be less than credible in his testimony. That's being how not credible the claimant was, and a significant part of Dr. Eidman's opinions regarding aggravation were related to the claimant's subjective complaints of pain. For example, the claimant, when confronted with Dr. Eidman's records that said he was complaining of extreme pain, the attorney in Dr. Eidman's office must have forged my name to those records that he signed off on saying he was under extreme pain before the accident. We got affidavits from Dr. Eidman's office and the person that he said forged the records, and obviously that had some impact on Judge Rosenau, and the other pretty bald-faced lie that he had was when he got his release to return to work for a little while, he took off saying that there was a problem with the seniority button, his union seniority button. However, in his deposition, he said that he took off because he didn't want to screw up his Social Security disability benefits. When we confronted him with that, he said the court reporter must have lied and stuck that in there at random. So he had no credibility with regard to Dr. Eidman and the claimant. That's what this case turned on. The credibility of the experts reviewing the objective evidence in the medical files, and it really comes down to that, and I think, Judge, I hate to only take that much time, but I think this one's fairly clear based on the substantial evidence that was presented at trial. If you all have any questions for me, I'll obviously take them. I want to thank you, Mr. Wheaton. Thank you. I couldn't hear you, sir. I was straining to hear him a minute ago. Mr. Saipal for rebuttal. Thank you, Your Honor. The claimant, the judge, did find that the claimant had credibility. Tell us why, I mean, on the substantial evidence, given the fact of the credibility of the Second, tell me why. Because the substantial evidence that was presented by UMS addressed the permanent change in the structure of the spine as opposed to a temporary aggravation. They didn't address the temporary aggravation. And under the Seventh Circuit in Marine Corps, a temporary flare-up and exacerbation of pain symptoms is enough. The Fifth Circuit . . . That's your case. That's my case, yes. The proper analysis wasn't done. I agree, Your Honor, that Judge, the AOJ, had the authority, had the discretion to make determinations on the claimant's credibility and the credibility of the evidence. The problem is he didn't weigh the evidence for turning on the right question. The question, in part, was, was the structure of the spine disturbed? But also, was there an aggravation of pain symptoms? And I think that's what was ignored from the doctor's opinions and ignored from the judge's rationale when he ultimately ruled his conclusion. At the end of the day, was there any evidence from the standpoint of your client that wasn't, you know, put forth to the AOJ? In other words, did you have a full-thrusted, full-throated effort to put all the evidence in in the best light of your client to have reached an optimum? And to your point and your question that you have for Mr. Wheat, both sides did present substantial evidence. We presented substantial evidence supporting an aggravation. And under the Longshore Act, the presumption under Section 20A is in favor of the claimant. And the lawyer actually found the presumption, or he found and met his prima facie case providing the presumption of an aggravation injury against UMS. So UMS had the burden to present evidence to rebut that. They rebutted a permanent aggravation, but they didn't rebut a temporary aggravation because all the doctors relied on by UMS and the judge when he made his finding was based on . . . all these doctors said that there could have been a temporary aggravation, which under the . . . so he never got to the point where he's weighing the evidence for a preponderance because the presumption was never rebutted. It was rebutted to the permanent impairment, but not towards that temporary aggravation. And I can't say what the judge would have done because I don't think he addressed the proper question of whether there was a temporary aggravation or not. He concedes that it was likely because all the doctors thought it was likely. And to the point on the credibility on page . . . I don't disagree again on the weighing of the evidence of the credibility of the claimant, but that's not at issue here. Did the judge actually decide this case on the correct question? And I believe he ignored the temporary aggravation. I'll go back to what we cited in our brief on page 26. The judge in his decision order said, if the claimant's condition was aggravated in any way by his 2011 injury, then the aggravation finding would be against UMS. But in any way I interpret and I believe it should include a temporary lumbar sprain. And I don't believe . . . I don't think the judge did, but then failed to apply it at the end of the day. All right. Thank you, Mr. Seipel. Thank you. Your case and all of today's cases is under submission and the court is in recess until 9 o'clock tomorrow.